UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS PRITCHARD,

    Plaintiff,

v.                           Case No: 2:19-cv-94-FtM-29MRM

FLORIDA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC.,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion to Dismiss (Doc. #16) filed on March 6, 2019. Plaintiff filed a Response in Opposition (Doc. #20) on March 8, 2019. For the reasons that follow, the motion is granted in part and denied in part.

**I.**

**A. Parties**

Plaintiff Thomas Pritchard is an eighteen-year-old high school senior at the Canterbury School in Fort Myers. (Doc. #1, pp. 1-2.) Defendant Florida High School Athletic Association, Inc. is a non-profit corporation and the athletic administrative organization that regulates student participation in Florida high school athletic programs. (Id. p. 2.) As part of this regulation,

defendant adopts and publishes bylaws relating to student-athlete eligibility. (Id. p. 3.) One such bylaw provides the following:

> **9.5.1　High School Student Has Four Years of Eligibility.** A student is limited to four consecutive school years of eligibility beginning with school year he/she begins ninth grade for the first time. This does not imply that the student has four years of participation. After four consecutive school years, the student is permanently ineligible.

(Doc. #1-3, p. 23.)

### B. Factual Background

According to the Verified Complaint, plaintiff participated in high school athletics during his ninth and tenth grade years in Virginia before transferring to Florida and attending Canterbury. (Doc. #1, pp. 4-6.) Based on a pre-enrollment assessment, Canterbury administrators recommended plaintiff repeat the tenth grade. (Id. p. 6.) Plaintiff did so, and competed in the school's basketball and lacrosse programs. (Id.) The following year in the eleventh grade, plaintiff competed in the school's football, basketball, and lacrosse programs. (Id.) Under defendant's Bylaw 9.5.1, this was the final year of plaintiff's eligibility because it was his fourth consecutive year in high school.

Plaintiff is now in the twelfth grade at Canterbury and on track to graduate at the end of the school year. (Id. p. 7.) In August 2018, Canterbury filed a request with defendant to waive Bylaw 9.5.1 and allow plaintiff to have a fifth year of eligibility. (Doc. #1-4, pp. 24-27.) During the 2017-18 school

2

year, Canterbury staff recommended a psychologist test plaintiff. (Doc. #1, pp. 6-7.) A full psychoeducational evaluation concluded plaintiff possessed a learning disorder with impairment in reading and comprehension. (Id. p. 7.) Canterbury administrators also identified a previous injury to plaintiff's hand, which caused him to have to write with his non-dominate hand, as a physical disability that adversely affected his math proficiency. (Id. p. 7.) As a supplement to the school's requested waiver, plaintiff's attorney argued that a waiver was appropriate because of, *inter alia*, plaintiff's learning disability and his hand injury. (Doc. #1-4, p. 50.)

Defendant's Sectional Appeals Committee held a hearing on the matter on September 6, 2018 and ultimately denied the request for a waiver. (Doc. #1-6, p. 109.) A second hearing was held on October 4, 2018 with the same result. (Doc. #1-8, p. 150.) Plaintiff appealed the Committee's decision to defendant's Board of Directors, which conducted a hearing on October 28, 2018. (Doc. #1-10, p. 195.) The Board upheld the Committee's ruling denying the waiver on November 1, 2018. (Id.)

**C. Procedural Background**

On February 13, 2019, plaintiff filed a three-count Verified Complaint against defendant, alleging the following: (1) disability discrimination under the Americans with Disabilities Act ("ADA"); (2) disability discrimination under the

3

Rehabilitation Act of 1973; and (3) disparate impact discrimination under the ADA. (Doc. #1, pp. 12-16.) Plaintiff requests this Court issue a judgment declaring Bylaw 9.5.1 discriminatory as applied to plaintiff, a temporary restraining order, a preliminary injunction, a permanent injunction, and monetary damages.[1] (Id. pp. 11, 17.)

On March 6, 2019, defendant filed its Motion to Dismiss. (Doc. #16.) The motion argues that each of plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that plaintiff is legally not entitled to compensatory damages. (Id. pp. 5-22.) The Court will address these arguments in turn.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

---

[1] The Court has previously denied the requests for a temporary restraining order and a preliminary injunction. (Doc. #6; Doc. #28.)

above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

**A. Failure to State a Claim**

As previously noted, defendant argues that each of the three claims raised in plaintiff's Verified Complaint should be dismissed for failing to state a claim. (Doc. #16, pp. 5-21.) The Court will address this argument as it relates to each claim, beginning with the Rehabilitation Act claim.

**1. Disability Discrimination Under the Rehabilitation Act**

The Rehabilitation Act provides, in pertinent part, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Accordingly, to establish a prima facie case of discrimination under the Rehabilitation Act, plaintiff must show that he was: (1) disabled or perceived to be disabled; (2) a qualified individual; and (3) discriminated against on the basis of his disability. Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 Fed. App'x 21, 24 (11th Cir. 2009) (citing Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005)).

The Verified Complaint alleges plaintiff is a disabled-student athlete otherwise qualified to participate in athletics at Canterbury and that defendant has discriminated against him by reason of his disability. (Doc. #1, pp. 14-15.) The Verified

Complaint further asserts that defendant, a recipient of federal funds, refused to accommodate plaintiff and allow him to participate in interscholastic athletics during the 2018-19 school year. (Id.) Defendant's motion to dismiss argues, *inter alia*, that plaintiff's claim fails because (1) he is not an "otherwise qualified" individual under the Rehabilitation Act and (2) he is not being excluded from participation "solely by reason" of his disability. (Doc. #16, pp. 18, 19.) The Court agrees.

As the Court previously determined in its Opinion and Order denying plaintiff's Motion for Preliminary Injunction, (Doc. #28, pp. 8-9), it is clear plaintiff is not being excluded from participating in high school athletics "solely by reason" of his disability. Rather, plaintiff has completed four consecutive years and, therefore, he is ineligible under defendant's bylaws. See Sandison v. Mich. High Sch. Athletic Ass'n, Inc., 64 F.3d 1026, 1032 (6th Cir. 1995) (finding high school athletic association's rule disqualifying students who reach nineteen years of age by a specified date could not be characterized as a decision made "solely by reason" of a student's disability because it was a neutral rule applied neutrally); see also Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 n.6 (4th Cir. 1999) ("Undoubtedly, the application of a neutral rule that applies to disabled and nondisabled individuals alike cannot be considered discrimination on the basis of disability.").

Furthermore, the Court finds plaintiff has failed to sufficiently allege he is "otherwise qualified" to participate. Due

7

to his completion of four consecutive years of high school, plaintiff cannot meet defendant's requirements regardless his disability. To the extent the Verified Complaint asserts defendant should have accommodated plaintiff by allowing him a fifth year of eligibility and participation, (Doc. #1, p. 15), the Court disagrees. Under the Rehabilitation Act, a disabled individual is "otherwise qualified" to participate in a program if, with "reasonable accommodation," the individual can meet the "necessary" requirements of the program. <u>Sandison</u>, 64 F.3d at 1034 (citing <u>Doherty v. S. Coll. of Optometry</u>, 862 F.2d 570, 574 (6th Cir. 1988)). However, an accommodation is not reasonable if it imposes "undue financial and administrative burdens," or if it requires a "fundamental alteration in the nature of [the] program." <u>Sch. Bd. of Nassau Cty., Fla. v. Arline</u>, 480 U.S. 273, 287 n.17 (1987). As several circuit courts have concluded considering similar issues, the Court finds the accommodation requested by plaintiff would constitute a fundamental alteration to the nature of defendant's eligibility program. <u>See</u> <u>McPherson v. Mich. High Sch. Athletic Ass'n, Inc.</u>, 119 F.3d 453, 462 (6th Cir. 1997) ("Requiring a waiver of the eight-semester rule, under the circumstances present here, would work a fundamental alteration in Michigan high school sports program."); <u>Sandison</u>, 64 F.3d at 1035 (concluding waiver of age restriction fundamentally alters the high school sports program); <u>Pottgen v. Mo. State High Sch. Activities Ass'n</u>, 40 F.3d 926, 929-30 (8th Cir. 1994) (finding age restriction was an essential eligibility requirement and waiving

such a requirement would constitute a fundamental alteration of high school sports program). Accordingly, the Court finds plaintiff has failed to plead a prima facie case of discrimination under the Rehabilitation Act.

**2. Disability Discrimination Under the ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bricoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007).

Similar to the Rehabilitation Act claim, the Verified Complaint alleges plaintiff is disabled as defined by the ADA and defendant has discriminated against him by reason of that disability. (Doc. #1, pp. 12-13.) The Verified Complaint also asserts defendant, a "public entity" as defined by 42 U.S.C. § 12132, refused to accommodate plaintiff and allow him to participate in interscholastic athletics during the 2018-19 school year. (Id.) Defendant's motion to dismiss argues, *inter alia*, that (1) plaintiff is not a "qualified individual" and (2) he is not being excluded from participation "by reason" of a

9

disability. (Doc. #16, pp. 6, 19.)  As with the Rehabilitation Act claim, the Court agrees.[2]

The ADA defines the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  As previously explained, plaintiff has completed his four years of eligibility under defendant's bylaws and may participate for a fifth year only if Bylaw 9.5.1 is waived.  As the Court has determined such a waiver would constitute a fundamental alteration of defendant's eligibility program, the Court finds it is not a reasonable modification.  See Sandison, 64 F.3d at 1037 (concluding waiver of age restriction was not a reasonable modification); Pottgen, 40 F.3d at 931 (same).  Furthermore, the Court finds that plaintiff has failed to sufficiently allege his exclusion from participation was "by reason" of his disability.  The Court notes again that plaintiff is prevented from participating because he has completed four consecutive years, and not because of his disability.  See Sandison, 64 F.3d at 1036 ("We again conclude that Sandison and

---

[2] Claims brought under the Rehabilitation Act are evaluated under the same standards as claims brought under the ADA. Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 n.3 (11th Cir. 2001); see also Badillo v. Thorpe, 158 Fed. App'x 208, 214 (11th Cir. 2005) ("With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable.").

Stanley were excluded by reason of age, not disability. Absent their respective learning disability, the plaintiffs still would not meet the age restriction."). Accordingly, the Court concludes plaintiff has failed to plead a claim of discrimination under Title II of the ADA.

### 3. Disparate Impact Discrimination Under the ADA

To succeed on a disparate impact claim under the ADA, plaintiff must prove that a facially neutral practice caused a "significant discriminatory effect." Smith v. Miami-Dade Cty., 21 F. Supp. 3d 1292, 1295 (S.D. Fla. 2014) (quoting Stephen v. PGA Sheraton Resort, Ltd., 873 F.2d 276, 279 (11th Cir. 1989)). To establish a prima facia case of disparate impact discrimination under the ADA, plaintiff must (1) identify the facially neutral practice or policy that allegedly had a disproportionate impact, and (2) provide statistical evidence indicating that the challenged policy results in discrimination. Forsyth v. Univ. of Ala. Bd. of Trs., 2018 WL 4517592, *6 (N.D. Ala. Sept. 20, 2018). The statistical disparities must be "sufficiently substantial that they raise an inference of causation." Smith, 21 F. Supp. 3d at 1295 (quoting Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)).

In the Verified Complaint, plaintiff makes the following assertion:

> FHSAA Bylaw 9.5.1, which limits a student to four consecutive school years of athletics eligibility

> beginning with the student's ninth grade, has a disproportionate adverse effect on individuals with learning and physical disabilities in violation of the ADA. Specifically, Bylaw 9.5.1 has a disparate impact because the rule does not provide an exemption for student-athletes who were required or permitted to repeat a high school grade (ninth through twelfth grades) for an academic reason based, in whole or in part, on a learning or physical disability.

(Doc. #1, p. 16.) Defendant's motion argues the claim should be dismissed because (1) plaintiff "has failed to allege the required statistical evidence to show disparity," and (2) plaintiff's claim that the bylaw has a "disproportionate adverse effect" is a mere legal conclusion rather than a true factual allegation. (Doc. #16, p. 9.) The Court disagrees.

As to defendant's first argument, while statistical evidence is necessary to *prevail* on a disparate impact claim, it is not required to survive a motion to dismiss at the pleading stage. See Forsyth, 2018 WL 4517592, *6 ("[T]he court agrees with Defendant that, in the Eleventh Circuit, statistical evidence showing the discriminatory result of the challenged employment practice would be necessary to *prevail* on a disparate impact claim. However, again, this is not the appropriate standard to measure Plaintiff's claims at the pleading stage. Without the benefit of discovery, it is virtually impossible for a Plaintiff to present data reflecting disparate impact. To hold otherwise would, in the vast majority of cases, shut the courthouse door on a plaintiff alleging a claim based on disparate impact. Plaintiff

should be afforded the opportunity of discovery before he is required to present detailed statistics to the court." (citations omitted)); cf. Smith, 21 F. Supp. 3d at 1295-96 (granting summary judgment on disparate impact claim when "after months of discovery" the plaintiff failed to proffer sufficient statistical evidence to make a prima facia case of disparate impact). Regarding defendant's second argument, the Court finds plaintiff's assertion that Bylaw 9.5.1 has a disproportionate adverse effect on individuals with learning and physical disabilities sufficient to state a claim of disparate impact. See Forsyth, 2018 WL 4517592, *6 ("[A]t the pleadings stage, it is sufficient that Plaintiff has alleged that 'Defendant's evaluation and disciplinary system has a disparate impact on individuals, such as Plaintiff, who suffer from depression and anxiety solely because they manifest symptoms of that mental disability.'"). Therefore, the Court rejects defendant's argument that Count Three should be dismissed.[3]

---

[3] The Court's conclusion regarding Counts One and Two moots defendant's separate argument that the damages sought for those claims should be dismissed due to lack of discriminatory intent. (Doc. #16, pp. 21-22); see McCullum v. Orlando Reg'l Heathcare Sys., Inc., 768 F.3d 1135, 1146-47 (11th Cir. 2014) ("To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent."). To the extent defendant makes the same argument for Count Three, compensatory damages are unavailable for disparate impact claims under the ADA. See Windham v. Harris Cty., Texas, =, 235 n.5 (5th Cir. 2017) ("To recover compensatory damages for disability discrimination under Title II of the ADA, a plaintiff must also

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. #16) is **GRANTED in part and DENIED in part.** Counts One and Two of the Verified Complaint are **dismissed without prejudice** to filing an Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __6th__ day of May, 2019.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

---

show that the discrimination was 'intentional' in the sense that it was more than disparate impact.").