UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS PRITCHARD,

          Plaintiff,

v.                              Case No: 2:19-cv-94-FtM-29MRM

FLORIDA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC.,

          Defendant.

_____

## OPINION AND ORDER

     This matter comes before the Court on the defendant's Motion
for Summary Judgment Pursuant to Federal Rules of Civil Procedure
Rule 56 (Doc. #81) filed on March 19, 2020.  Plaintiff filed a
Response (Doc. #87) on April 24, 2020, to which defendant filed an
Amended Reply (Doc. #100) on June 18, 2020.  For the reasons that
follow, the motion is granted in part and denied in part.[1]

### I.

**A. Parties**

     When this action commenced, plaintiff Thomas Pritchard was an
eighteen-year-old high school senior at the Canterbury School in
Fort Myers.  (Doc. #76, pp. 1-2.)  Defendant Florida High School

_____

     [1] Defendant also filed a Motion for Oral Argument (Doc. #82)
on March 19, 2020.  The Court finds oral argument unnecessary in
deciding the summary judgment motion and, therefore, the request
will be denied.

Athletic Association, Inc. is a non-profit corporation and the athletic administrative organization that regulates student participation in Florida high school athletic programs. (Id. p. 2.) As part of this regulation, defendant adopts and publishes bylaws relating to student-athlete eligibility. (Id. p. 3.) One such rule, Bylaw 9.5.1, limits student-athletes "to four consecutive school years of eligibility beginning with school year he/she begins ninth grade for the first time." (Id. p. 4.) The rule further states, "This does not imply that the student has four years of participation. After four consecutive school years, the student is permanently ineligible." Id.

### B. Factual Background[2]

Plaintiff participated in high school athletics during his ninth and tenth grade years in Virginia before transferring to Florida and attending Canterbury. (Id. pp. 4-6.) Based on a pre-enrollment assessment, Canterbury administrators recommended plaintiff repeat the tenth grade, which he did. (Id. pp. 6-7.) Plaintiff competed in the school's various sports during his tenth and eleventh grade years. (Id. p. 7.) During plaintiff's eleventh

---

[2] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

grade year, Canterbury staff recommended a psychologist test plaintiff's learning ability. (Id.) A full psychoeducational evaluation concluded plaintiff possessed a learning disorder with impairment in reading and comprehension. (Id.) Canterbury administrators also identified a previous injury to plaintiff's hand as a physical disability that adversely affected his math proficiency. (Id.)

Under defendant's Bylaw 9.5.1, eleventh grade was the final year of plaintiff's eligibility to participate in interscholastic competition because it was his fourth consecutive year in high school. In August 2018, Canterbury filed a request with defendant to accommodate plaintiff's disabilities by waiving Bylaw 9.5.1 and allowing a fifth year of eligibility. (Id. p. 8.) Canterbury also filed a supplemental submission prepared by plaintiff's attorney, stating plaintiff was affected by two disabilities: (1) a learning disorder; and (2) a hand injury. (Id.; Doc. #93-2, p. 33.)

Defendant's Sectional Appeals Committee held a hearing on the matter on September 6, 2018. (Doc. #76, p. 3.) During the hearing, defendant was informed of plaintiff's family history of alcoholism, and that plaintiff's hand injury occurred in the summer of 2015 as a result of drinking alcohol. (Doc. #93-3, p. 89.) After the hearing, the Committee voted to deny the waiver request, finding the decision to have plaintiff repeat the tenth grade was

"a parental choice in order to place the student in a private school setting." (Doc. #76, p. 9; Doc. #93-4, p. 92.) A second hearing was held on October 4, 2018 with the same result. (Doc. #76, p. 10.) Plaintiff appealed the Committee's decision to defendant's Board of Directors, which conducted a hearing on October 28, 2018 and upheld the Committee's decision. (Id. p. 11.)

### C. Procedural History

Plaintiff initiated this matter in February 2019 and filed a Second Amended Complaint (Doc. #76) on February 25, 2020. The Second Amended Complaint alleges the following three claims: (1) disability discrimination under the Americans with Disabilities Act ("ADA"); (2) disability discrimination under the Rehabilitation Act of 1973; and (3) violations of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Florida Constitution. (Doc. #76, pp. 11-24.) On June 1, 2020, the Court partially granted defendant's previously filed motion to dismiss Count Three of the Second Amended Complaint, and the Fourteenth Amendment portion of the claim was dismissed. (Doc. #94.)

On March 19, 2020, defendant filed the motion for summary judgment currently before the Court, arguing it is entitled to summary judgment on the ADA and Rehabilitation Act claims because plaintiff is not "disabled" under those statutes. (Doc. #81, pp.

3-24.)  Regarding Count Three, the motion asserts the Court lacks subject matter jurisdiction over the claim and therefore defendant is entitled to summary judgment.  (Id. pp. 24-25.)

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted).  A fact is "material" if it may affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party.  Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."  St. Charles Foods, Inc. v. America's

Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting

Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-

97 (11th Cir. 1983)).  "If a reasonable fact finder evaluating the

evidence could draw more than one inference from the facts, and if

that inference introduces a genuine issue of material fact, then

the court should not grant summary judgment."  Allen v. Bd. of

Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

As noted, defendant asserts it is entitled to summary judgment

on each of the three claims in the Second Amended Complaint.  The

Court will address defendant's arguments as they relate to each

claim.

**III.**

**A. Disability Discrimination under the ADA**

Title II of the ADA provides that "no qualified individual

with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to

discrimination by any such entity."  42 U.S.C. § 12132.

> The term "qualified individual with a disability"
> means  an  individual  with  a  disability  who,  with  or
> without reasonable modifications to rules, policies, or
> practices, the removal of architectural, communication,
> or  transportation  barriers,  or  the  provision  of
> auxiliary  aids  and  services,  meets  the  essential
> eligibility requirements for the receipt of services or
> the participation in programs or activities provided by
> a public entity.

42 U.S.C. § 12131(2). To state a claim under Title II, plaintiff must show (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of plaintiff's disability. Bricoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007).

The Second Amended Complaint alleges defendant discriminated against plaintiff by reason of his disabilities by (1) considering his disabilities during the waiver request, and (2) refusing to reasonably accommodate him. (Doc. #76, ¶ 48.) The main argument in defendant's motion for summary judgment is that plaintiff is not disabled under the ADA. (Doc. #81, pp. 11-21.) In support, defendant relies on the psychological report diagnosing plaintiff's learning disorder, medical records relating to plaintiff's hand injury, and admissions made by plaintiff during discovery.[3] Plaintiff responds that the record establishes he has

---

[3] Defendant also relies on plaintiff's unsworn interrogatory responses. (Doc. #79.) However, these cannot be considered for purposes of summary judgment. See Fed. Trade Comm'n v. Williams, Scott & Assocs., LLC, 679 Fed. App'x 836, 838 (11th Cir. 2017) (finding district court did not abuse its discretion in refusing to consider unsworn interrogatory responses and noting, "Courts need not consider unsworn witness statements when deciding a motion for summary judgment"); Dutton v. Reynolds, 2014 WL 4540161, *9 (M.D. Fla. Sept. 11, 2014) ("Defendant Osilka submitted unsworn Answers to Plaintiff's First Amended Interrogatories for this

three disabilities: the learning disorder, the hand injury, and alcoholism. (Doc. #87, pp. 9-17.)  The Court will address each of these in turn.

### 1. Learning Disorder

The ADA defines an individual with a "disability" as someone who has "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).[4]  Accordingly, plaintiff must initially show that his learning disorder constitutes a "physical or mental impairment" for purposes of the ADA.  As noted, a full psychological evaluation was conducted on plaintiff in 2018 during the eleventh grade and diagnosed him with the following: "Specific Learning Disorder with Impairment in Reading, Mild, Comprehension." (Doc. #93-2, p. 82.)  Defendant argues plaintiff's learning disorder does not qualify as a "mental impairment" because it is a "mild" learning disorder.  (Doc. #81, pp. 11-16.)  Having

---

Court's consideration on summary judgment.  Unsworn statements cannot be considered by this Court in addressing a summary judgment motion." (citation omitted)); MacDonald v. Circle K Stores, Inc., 2009 WL 113377, *1 (M.D. Fla. Jan. 16, 2009) ("[U]nsworn and unsigned interrogatory 'answers' plainly do not pass summary judgment muster.").

[4] While the ADA defines disability in additional ways, see 42 U.S.C. § 12102(1)(B)-(C), plaintiff relies upon the above definition to argue he is disabled.  (Doc. #87, pp. 10-11.)

reviewed the arguments and the record, the Court finds summary judgment on this issue is not appropriate.

The federal regulations relating to the ADA have defined "mental impairment" as "[a]ny mental or psychological disorder, such as intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (2012).[5] While the regulations relating to the ADA do not define "specific learning disabilities," a regulation designed to assist states with the education of children with disabilities provides the following definition:

> Specific learning disability means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in the imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, including conditions such as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia.

34 C.F.R. § 300.8(c)(10)(i). Given that plaintiff's diagnosed learning disorder involved impairment in reading and comprehension, the Court finds plaintiff has submitted sufficient

---

[5] Although this definition is contained in regulations related to Title I of the ADA, the Court finds it instructive in this case. See Moore v. Chilton Cty. Bd. of Educ., 1 F. Supp. 3d 1281, 1293 n.9 (M.D. Ala. 2014) (applying § 1630.2 definitions to Title II case).

evidence to have a jury decide whether the learning disorder constitutes a "mental impairment" under the ADA.

However, "[m]erely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002), *abrogated on other grounds by* ADA Amendments Act of 2008, Pub. L. 110-325. Similarly, a diagnosis of a learning disorder without more is insufficient to demonstrate a disability under the ADA. See Williamson v. Clarke Cty. Dep't of Human Res., 834 F. Supp. 2d 1310, 1319 n.13 (S.D. Ala. 2011) ("A mere diagnosis of ADHD, without more, may not suffice to establish disabled status under the ADA or the Rehabilitation Act."). Rather, "[c]laimants also need to demonstrate that the impairment limits a major life activity." Williams, 534 U.S. at 195. Accordingly, assuming he has a mental impairment, plaintiff must also show that his learning disorder substantially limits one or more major life activities.

The Second Amended Complaint does not allege what major life activity plaintiff's learning disorder affects, but in his Response plaintiff asserts all three of his alleged disabilities "substantially limit[] his major life activities of education and athletics." (Doc. #87, p. 9.) From the outset, the Court finds that "[t]he inability to play sports does not constitute a substantial impairment of a major life activity." Coker v. Tampa Port Auth., 962 F. Supp. 1462, 1467 (M.D. Fla. 1997), *disagreed*

_with on other grounds by_ Macuba v. Deboer, 193 F.3d 1316, 1324
n.18 (11th Cir. 1999); see also Rossbach v. City of Miami, 371
F.3d 1354, 1358 n.6 (11th Cir. 2004) (finding district court
correctly ruled that "participating in sport activities" was not
a major life activity).  Accordingly, plaintiff's argument that
his alleged disabilities limited his ability to play sports is
irrelevant for purposes of the ADA.

As to plaintiff's claim that his learning disorder affected
his education, plaintiff states his alleged disabilities "severely
limited his ability to master and learn complex and multiple
subjects in Canterbury's enhanced educational setting," and
therefore he was limited "in the major life activity of learning."
(Doc. #87, pp. 10-11.)  Because the ADA regulations include
"learning" in a non-exhaustive list of "major life activities," 29
C.F.R. § 1630.2(i)(1)(i), plaintiff has met his burden of showing
his impairment affects a major life activity under the ADA.
Accordingly, the final issue is whether the learning disorder
"substantially limits" plaintiff's ability to learn.

"Determining whether the impairment substantially limits a
major life activity is ordinarily a question of fact for the jury;
however, summary judgment is appropriate if Plaintiff fails to
create a genuine issue of fact in this regard." Irizarry v. Mid
Fla. Cmty. Servs., Inc., 2009 WL 2135113, *3 (M.D. Fla. July 14,
2009).  An impairment is a disability within the meaning of the

ADA if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. Determining "whether an impairment substantially limits a major life activity requires an individualized assessment," id. § 1630.2(j)(1)(iv), and "[t]he comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis," id. § 1630.2(j)(1)(v).

In arguing his learning disorder substantially limits his ability to learn, plaintiff relies upon the psychoeducational evaluation conducted in March 2018. (Doc. #87, pp. 9-11.) As part of that evaluation, the examiner conducted numerous tests and assessments on plaintiff. (Doc. #93-2, p. 75.) Per the evaluation, plaintiff scored in the average range in the following areas:

- IQ score;

- Verbal reasoning ability;

- Nonverbal reasoning ability;

- Ability to sustain attention, concentrate, and exert mental control;

- Ability to process simple or routine visual material without making errors;

- Long-term retrieval and short-term working memory clusters;

- Attention; and

- Overall cognitive ability.

(Id. pp. 77-82.) Plaintiff also scored in the "superior" range regarding his ability to plan. (Id. p. 81.) In measuring plaintiff's academic levels, the evaluation found that plaintiff was performing at grade-level in written language, but below grade level in math and reading. (Id. p. 80.) Reading was described as "a significant weakness." (Id.) As part of the report's diagnosis of "a learning disability in reading," it was recommended various accommodations be made for plaintiff at school, such as "100% extended time on all academic and standardized tests," and "[u]se of a reader on tests where reading is not being directly tested." (Id. pp. 82-83.)

Apart from the evaluation results, plaintiff has admitted to the following:

- He was never referred for special educational psychology testing until 2018;

- He was never assigned an individualized educational program;

- He met the requirements of each school he attended to be promoted to the next school grade;

- He was admitted into the eleventh grade in a Florida public school prior to withdrawing in November 2017; and

- He performed as well as the average student prior to his withdrawal.

(Doc. #80, pp. 4-5, 15.)   Finally, plaintiffs' Canterbury transcripts indicate he took nine honors courses and one advanced placement course during the tenth and eleventh grades, with his lowest grade a C in honors chemistry.   (Doc. #93-2, p. 14.)   The record also indicates plaintiff graduated from Canterbury (Doc. #45, p. 5) and was accepted into college (Doc. #14-4, p. 236).

Defendant argues that based on the above evidence, plaintiff "can exhibit no pattern of substantial academic disabilities" and, therefore, cannot prove a disability.   (Doc. #81, p. 18.)   Having considered the evidence in the record, the Court finds whether plaintiff's learning disability "substantially limited" his ability to learn is an issue for a jury.   It is true that the psychological evaluation indicates plaintiff scored in the average range across a variety of subjects, and "average (or above-average) performance presumptively establishes the absence of a substantial limitation."   Black v. Nat'l Bd. of Med. Exam'rs, 281 F. Supp. 3d 1247, 1249 (M.D. Fla. 2017).   However, plaintiff also scored below average in math and reading, with reading described as "a

significant weakness," and accommodations were recommended to help plaintiff overcome his learning disorder. Furthermore, while plaintiff's grades at Canterbury were Cs and above, he received Ds and an F in multiple courses during his ninth and tenth grades in Virginia. (Doc. #93-2, p. 13.) Accordingly, the Court finds that plaintiff has adduced sufficient evidence to create a genuine issue of material fact as to whether his learning disorder substantially limits his ability to learn. Cf. Black, 281 F. Supp. 3d at 1252-53 (finding no reasonable factfinder could conclude ADHS substantially limited Black in comparison to most people in the general population when "Black's biographical record consistently reveals average or above-average performance," including graduating at the top of her class in high school, excelling on the SAT, graduating from Princeton University, and enrolling at the University of Pennsylvania). Therefore, summary judgment on this issue is inappropriate.[6]

### 2. Hand Injury

In addition to the learning disorder, the Second Amended Complaint alleges plaintiff's hand injury constitutes a disability under the ADA. (Doc. #76, ¶ 49.) Assuming the injury constitutes

---

[6] Given the Court's conclusion, it need not address plaintiff's suggestion that he repeated tenth grade because of his learning disorder, as opposed to defendant's conclusion that it was the result of a parental decision to enroll plaintiff in a private school.

a physical impairment, plaintiff must show that it substantially limits his ability to learn.  "In determining whether an injury substantially limits a major life activity, we consider '(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'"  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998) (quoting Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 911 (11th Cir. 1996)). Having reviewed the record, the Court finds plaintiff has failed to adduce sufficient evidence to allow a reasonable factfinder to conclude the hand injury substantially limits his ability to learn.

The medical records submitted as exhibits to the Second Amended Complaint indicate plaintiff injured his hand in June 2015 by hitting a glass door.  (Doc. #93-2, p. 59.)  Plaintiff went to the emergency room and had sutures put in his wrist and one finger. (Id.)  As a result, his fingers were in pain and he was unable to straighten them.  (Id.)  The treating physician's assistant recommended plaintiff not play lacrosse or basketball until pain free and fully functional, "anywhere from 3 weeks to 3 months depending on the degree of the injury." (Id. p. 60.)  However, apparently problems persisted, and a subsequent MRI found two tendon tears and a ganglion cyst.  (Id. pp. 61-64.)

16

In suggesting his hand injury substantially limits his ability to learn, plaintiff relies on letters written by his mother and the Canterbury math lab director. (Doc. #87, p. 10.) These letters, which were submitted to defendant as part of the waiver process, discuss the hand injury and the resulting need for surgery, plaintiff's need to write with his left hand while his right was immobilized, and his struggles in math as a result. (Doc. #93-2, pp. 11, 17-18.) However, because neither of these letters qualify as sworn statements, they cannot be considered on a motion for summary judgment. See First-Citizens Bank & Tr. Co., Inc. v. Brannon, 722 Fed. App'x 902, 905 (11th Cir. 2018) ("As a general rule, district courts may not consider unsworn statements when determining the propriety of summary judgment." (marks and citation omitted)); Williams, Scott & Assocs., LLC, 679 Fed. App'x at 838 (finding district court did not abuse its discretion in refusing to consider unsworn letters on motion for summary judgment); Worthy v. Mich. Bell Tel. Co., 472 Fed. App'x 342, 344 (6th Cir. 2012) ("Because these letters are unsworn, they are not competent summary judgment evidence, and the district court properly refused to consider them in ruling on Michigan Bell's motion for summary judgment.").

Without the letters, there is insufficient evidence from which a reasonable factfinder could determine the hand injury substantially limits plaintiff's ability to learn. Accordingly,

plaintiff has failed to show his hand injury is a disability under the ADA, and, therefore, summary judgment on this issue is appropriate.  See Ates-Jackson v. Verizon Wireless (VAW) LLC, 505 Fed. App'x 871, 873 (11th Cir. 2013) ( "Summary judgment is appropriate when the moving party meets its burden of production, demonstrating that no genuine issue of any material fact exists, and the non-moving party fails to present evidence showing that a reasonable jury could find in its favor.").

### 3. Alcoholism

Finally, plaintiff states he suffers from alcoholism, which he argues is a disability under federal law.  (Doc. #87. p. 17.) However, "[a]lcoholism is not a *per se* disability, but rather must be shown to be an impairment that substantially limits on[e] or more of a plaintiff's major life activities."  Knowles v. Knight, 2011 WL 13175198, *3 (M.D. Fla. July 8, 2011) (citation omitted); see also Goldsmith v. Jackson Mem'l Hosp. Pub. Health Tr., 33 F. Supp. 2d 1336, 1342 (S.D. Fla. 1998) ("The ADA requires an individualized determination that a claimant has a history of impairment, thus alcoholism cannot be classified a *per se* disability.").  "Alcoholism does not substantially limit a major life activity when the abuse, although frequent, is only temporarily incapacitating.  Permanency, not frequency, is the touchstone of a substantially limited impairment."  Knowles, 2011 WL 13175198, *3 (citations omitted).

In arguing his alcoholism qualifies as a disability, plaintiff relies upon (1) his family history of alcoholism, (2) the fact that his hand injury occurred as a result of alcohol consumption, (3) his fears of being associated with alcoholism, and (4) his joining Alcoholics Anonymous and receiving counseling after his waiver was denied. (Doc. #87, pp. 17-20; Doc. #14-3, pp. 233-34.) The Court finds this evidence insufficient to demonstrate a disability under the ADA. Despite plaintiff's alleged alcohol dependence, he was able to participate in sports throughout his life, never received a grade below a C at Canterbury, and was admitted to college. "In sum, while Plaintiff's alcohol dependence may have caused him intermittent periods of temporary incapacity, these periodic issues did not rise to the level of establishing a permanent impairment and, thus, do not constitute a disability under the ADA." Knowles, 2011 WL 13175198, *4; see also Goldsmith, 33 F. Supp. 2d at 1342 ("History of treatment does not . . . establish that alcoholism substantially impacted a major life activity."). Because plaintiff has failed to present sufficient evidence to show his alcoholism "substantially limited" one or more major life activities, his alcoholism does not qualify as a disability under the ADA. Accordingly, summary judgment is appropriate on this issue as well.

### B. Disability Discrimination under the Rehabilitation Act

Turning to Count Two in the Second Amended Complaint, the Rehabilitation Act provides, in pertinent part, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To establish a prima facie case of discrimination under the Rehabilitation Act, plaintiff must show that he was: (1) disabled or perceived to be disabled; (2) a qualified individual; and (3) discriminated against on the basis of his disability. Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 Fed. App'x 21, 24 (11th Cir. 2009) (citing Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005)). Furthermore, if establishing discrimination by failure to make a reasonable accommodation, plaintiff must show that (1) he was disabled, (2) he was otherwise qualified, and (3) a reasonable accommodation was not provided. Nadler v. Harvey, 2007 WL 2404705, *5 (11th Cir. Aug. 24, 2007) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).

The Second Amended Complaint alleges defendant discriminated against plaintiff because of his disabilities in violation of the Rehabilitation Act. (Doc. #76, pp. 16-21.) In moving for summary judgment on this claim, defendant makes the same argument as it

did on the ADA claim: plaintiff is not "disabled" for purposes of the statute. (Doc. #81, pp. 5-21.) The Court need not readdress this issue. Claims raised under the Rehabilitation Act are evaluated under the same standards as claims raised under the ADA, Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 n.3 (11th Cir. 2001), and "[t]he standard for determining whether a person is disabled under the Rehabilitation Act is the same as under the ADA," Hunter v. U.S. Postal Serv., 535 Fed. App'x 869, 872 n.2 (11th Cir. 2013). Accordingly, as stated for the reasons above, the Court finds plaintiff's hand injury and alcoholism do not constitute disabilities under the Rehabilitation Act. However, because there are disputed issues of material fact as to whether plaintiff's learning disorder constitutes a disability under both statutes, summary judgment on Count Two as a whole is inappropriate.

### C. Violation of Due Process Clause of Florida Constitution

The third and final claim in the Second Amended Complaint originally alleged that by denying the waiver request, defendant violated plaintiff's substantive due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Florida Constitution. (Doc. #76, p. 21.) However, defendant previously filed a motion to dismiss the claim for lack of subject matter jurisdiction, which the Court granted in part, dismissing the Fourteenth Amendment portion of the claim.

(Doc. #94.)  Accordingly, the only remaining claim in Count Three is the state law claim, which the Second Amended Complaint asserts this Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367.  (Doc. #76, ¶ 7.)

In moving for summary judgment, defendant again argues this Court lacks subject matter jurisdiction over the claim, stating, "The privilege of participating in interscholastic athletics falls outside the rights, privileges and immunities secured by the Constitution of the United States and protected by the Federal Courts."  (Doc. #81, p. 24.)  As it did in its previous motion to dismiss, defendant's summary judgment motion fails to address the substantive merits of plaintiff's state law claim or the supplemental jurisdiction issue.  Therefore, the request for summary judgment on Count Three will be denied.[7]

Accordingly, it is now

**ORDERED:**

---

[7] While defendant's Amended Reply addresses the substantive merits of the state law claim in arguing for summary judgment (Doc. #100, pp. 6-7), "District Courts, including this one, ordinarily do not consider arguments raised for the first time on reply," Allah El v. Avesta Homes, 2012 WL 515912, *3 (M.D. Fla. Feb. 16, 2012).  Furthermore, even if the Court were convinced not to exercise supplemental jurisdiction over the claim due to its alleged lack of merit, summary judgment would still be inappropriate.  See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").

1. Defendant's Motion for Summary Judgment Pursuant to Federal Rules of Civil Procedure Rule 56 (Doc. #81) is **GRANTED in part and DENIED in part**.  The motion is granted as to Counts One and Two to the extent these counts allege (1) plaintiff's hand injury and alcoholism are disabilities, and (2) participation in high school athletics is a major life activity.  The motion is otherwise denied.

2. Defendant's Motion for Oral Argument (Doc. #82) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of June, 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record